IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

*By casbell at 10:24 am, Mar 03, 2020*

| | |
|---|---|
| WASEEM DAKER, | |
| Petitioner, | CIVIL ACTION NO.: 6:17-cv-23 |
| v. | |
| WARDEN MARTY ALLEN, | |
| Respondent. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Waseem Daker's ("Daker") Third Amended 28 U.S.C. § 2254 Petition, Respondent's Answer-Response, Daker's Reply; and Daker's Motion for Summary Judgment, Respondent's Response, and Daker's Reply.  Docs. 146, 200, 207, 208, 221, 228.  For the reasons which follow, I **RECOMMEND** the Court **DISMISS without prejudice** Daker's § 2254 Petition, or alternatively, **DENY as moot** Daker's Petition.  I also **RECOMMEND** the Court **DENY as moot** Daker's Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Daker leave to appeal *in forma pauperis* and a Certificate of Appealability.

### BACKGROUND[1]

Daker has been a charge of the Georgia Department of Corrections since he was convicted in Cobb County, Georgia, on October 4, 2012 and sentenced to life imprisonment based on various charges, including malice murder.  Doc. 201-1 at 2;

---

[1] For a more thorough examination of the procedural background in this case, see Documents 10, 15, 52, 131, and 187.

http://www.dcor.state.ga.us/GDC/Offender/Query, search for "Daker, Waseem," last accessed Mar. 3, 2020. Daker was initially housed in a facility in the Middle District of Georgia until April 7, 2014, when he was transferred to Georgia State Prison ("GSP"), in the Southern District of Georgia. Daker remained at GSP until he was transferred to Macon State Prison (again, in the Middle District of Georgia) on April 19, 2018. Doc. 201-1 at 3. Since that April 19, 2018 transfer, Daker has remained in the Middle District of Georgia, although he was transferred between facilities in that District and is housed at Valdosta State Prison. Id.; Doc. 192. This is all important because Daker's habeas petition in this case concern events related to his assignment to Tier II at GSP from April 2016 to April 2018.

The Georgia Department of Corrections began a "Tier" program within its prisons in 2013 to "create a managed and measured stratification oriented pathway for offenders to successfully transition from Administrative Segregation to lower-security levels, and to provide greater management and implementation of long-term Administrative Segregation offenders." Doc. 31-1 at 2 (internal citation and punctuation omitted). The Tier II program "was designed as an offender management process and not as a punishment measure." Id. at 3. Inmates assigned to the Tier II Program have shown "a willingness to commit . . . violent, disruptive, . . ., or riotous actions, or who otherwise pose a serious threat to the safety and security of the facility."[2] Id. at 3. An inmate may be initially assigned to Tier II for various reasons, such as being involved with a gang, threatening others with bodily harm, having two or more disciplinary infractions for possession of a weapon in the previous year, having three or more disciplinary charges involving certain assaultive or excessive disruptive behavior in the past year, and

---

[2] The Tier Segregation Program consists of three tiers: Tier I ("Disciplinary, Protective Custody and Transient Housing"), Tier II ("Administrative Segregation"), and Tier III ("Special Management Unit (SMU) located at Georgia Diagnostic & Classification Prison (GDCP)"). Doc. 31-1 at 16. Only Tier II is relevant in this action.

2

attempting to introduce or traffic contraband.  Id. at 21–22.  A "Classification Committee" conducts a review of an inmate's Tier classification every 90 days.  Id. at 4.  Inmates may appeal their Tier II assignment and continued placement on Tier II.  Id. at 5.

Inmates assigned to the Tier II Program can progress through three Phases (starting with Phase One and progressing through Phase Three), depending on behavior and ability to adjust, and meeting or failing expectations.[3]  Id. at 4.  Many of the conditions and inmate privileges are the same for all inmates placed on Tier II, but some vary, depending on whether the inmate is in Phase One, Two, or Three.  Id. at 24; 43.  For example, all Tier II inmates are entitled to the same number of recreation hours, regardless of Phase assignment, but the number of phone calls and visits allowed for Tier II inmates depends on the Phase assignment.  Id.

During his time at GSP between April 2014 and April 2016, Daker was placed in administrative segregation eight times.  Id. at 6.  Then, in April 2016, Daker was assigned to Tier II.  Id.  He was placed in Tier II in April 2016 because he had three disciplinary reports within the preceding year which involved possession of a cell phone, possession of a weapon, failure to follow instructions, and an assault on an inmate, and because he had a pending disciplinary report for participating in a disturbance or strike.  Id. at 7.  Daker remained in Tier II at GSP from April 2016 until his transfer in April 2018.  Daker's assignment to Tier II, and its various Phases, was reviewed every 90 days, beginning in July 2016 and continuing until March 2018.  Id. at 8–10; Doc. 201-1 at 3–8.  During his time on Tier II at GSP, Daker moved between the various Phases (both up and down), but at all times remained in Tier II.  The decisions to retain

---

[3]     Arguably, there is a fourth phase, the so-called Phase Three Plus.  Phase Three Plus concerns inmates who have completed Phase Three but cannot return to general population because they pose a serious threat to safety and security.  Doc. 31-1 at 17.  Inmates in Phase Three Plus remain in Phase Three but continue to receive 90-day reviews.  Id.  The conditions and privileges in Phase Three Plus are slightly less restrictive than in Phase Three.  Id. at 43.

3

Daker on Tier II (and to assign him to various Phases) were based, according to Respondent, on Daker's successful completion of or failure to complete a particular Phase and, at times, new disciplinary violations. Doc. 31-1 at 8–10; Doc. 201-1 at 3–8. For example, in March 2018, at Daker's last 90-day review at GSP, the Classification Committee recommended Daker remain in Tier II, Phase One because Daker had received two disciplinary infractions for possession of a cell phone since his last review (infractions issued January 17, 2018 and January 24, 2018). Doc. 201-1 at 7–8, 12–13.

Daker filed his initial § 2254 Petition in this case raising numerous grounds, challenging the conditions of his Tier II assignment and, ostensibly, every disciplinary report he had ever received and every 90-day review ever conducted while he was housed at GSP. Doc. 1. The Magistrate Judge originally recommended Daker's Petition be dismissed in its entirety. Doc. 10. The Magistrate Judge later vacated a portion of the original Recommendation, leaving Grounds 32, 36–37, and 46–50 of Daker's initial § 2254 Petition for disposition, noting that Daker had "potentially raise[d] appropriate Section 2254 claims" in those grounds. Doc. 15 at 3. Respondent filed his Answer-Response, docs. 30, 31, and Daker filed a Reply, doc. 57. Daker's Third Amended Petition was filed as a result of the consolidation of five other § 2254 petitions Daker filed in this District and the Court directing Daker to file a single habeas petition, doc. 131. The Court advised Daker he was to exclude any facts or allegations this Court had already dismissed but should include facts relating to his placement and continued detention in Tier II segregation at Georgia State Prison. Id. at 6. In light of that history, the Court considers Daker's Third Amended Petition as the superseding and operative petition in this action.

In his Third Amended § 2254 Petition, Daker asserts that he should not have been assigned to Tier II at GSP in the first place and that his continued assignment to Tier II at GSP

4

was improper. Doc. 146. Daker attacks the numerous disciplinary violations he was charged with, which served as the basis for his initial placement and his continued assignment to Tier II, as well as the 90-day review process. Daker filed his Third Amended Petition, to which Respondent filed his Response, and Daker filed a Reply. Docs. 146, 200, 201, 207. Daker also filed a Motion for Summary Judgment. Docs. 208, 209, 210. Respondent filed a Response, and Daker filed a Reply. Docs. 221, 228. These matters are now before the Court for disposition.[4]

However, before turning to these matters, it is important to note Daker is also pursuing a similar § 2254 petition in the Middle District of Georgia, where Daker is currently housed. See Daker v. Warden, Nos. 18-13800, 18-14984, 2020 WL 751817, *1, *3 (11th Cir. Feb. 14, 2020). Daker filed his petition in the Middle District of Georgia soon after he was transferred from GSP to Macon State Prison. Pet., Daker v. McLaughlin, 5:18-cv-171 (M.D. Ga. May 17, 2018), ECF No. 1 (transfer on April 19, 2018; petition filed on May 17, 2018). Daker's § 2254 petition in the Middle District of Georgia contains many identical allegations to the allegations asserted in the Petition pending before this Court.[5] And, like the Petition in this District, Daker's petition in the Middle District of Georgia challenges his placement in and continued assignment to Tier II (though, his challenges are aimed at the facilities in the Middle District of Georgia, where he is now housed). The Eleventh Circuit Court of Appeals recently confirmed Daker can challenge

---

[4] The Court asked the parties whether Daker's claims are moot or are otherwise justiciable in this Court. Doc. 242. The parties responded, docs. 243, 244, with Respondent advising the Court Daker is in Tier II at Valdosta State Prison and mentioning the Court could transfer his Petition to the Middle District of Georgia. Doc. 244. As venue is also proper here, the Court declines to transfer Daker's Petition. However, should this Report and Recommendation be adopted, the effect will be a transfer of Daker's claims to the Middle District of Georgia.

[5] Like his Petition in this District, Daker's petition in the Middle District of Georgia attempted to challenge the conditions of Tier II, at least initially. The District Court for the Middle District of Georgia rejected Daker's "conditions" challenges as not cognizable in a § 2254 petition and dismissed those challenges. Daker v. Warden, Nos. 18-13800, 18-14984, 2020 WL 751817, *1, *3 (11th Cir. Feb. 14, 2020) (affirming dismissal of Daker's conditions challenges).

his placement and continued assignment in Tier II in a § 2254 petition and remanded Daker's Middle District of Georgia case back to the District Court for further proceedings. Daker v. Warden, Nos. 18-13800, 18-14984, 2020 WL 751817, *1, *3 (11th Cir. Feb. 14, 2020) (vacating dismissal of Daker's procedural due process claims concerning his placement in Tier II, remanding for further proceedings, and citing Krist v. Ricketts, 504 F.2d 887, 887–88 (5th Cir. 1974)). Thus, Daker is now pursuing a § 2254 petition in the Middle District of Georgia which challenges his placement in and continued assignment to Tier II in that District, as well as the instant Petition in this District, which challenges his placement in and continued assignment to Tier II at GSP.

## DISCUSSION

For ease of reference, as Daker has not numbered his grounds in his Third Amended Petition, doc. 146, the Court delineates his claims as Respondent has, doc. 200. Daker's grounds for relief are: (1) 25 disciplinary reports issued at GSP violated substantive and procedural due process, doc 146 at 24; (2) 18 disciplinary reports issued at GSP violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), id. at 25; (3) Disciplinary Report Number 666699 violated the First Amendment because it was issued as retaliation and chills the right to petition for redress of grievances and violated due process because Daker did not have access to Georgia Department of Corrections' Rules and Regulation (which he contends is unconstitutionally vague), and the report is false, id.; (4) his placement on Tier II in April 2016 was retaliation for successfully appealing his March and April 2015 placements in Tier II; (5) his Tier II hearings or 90-day reviews on March 20, 2015; April 20, 2015; April 2016; July 2016; October 2016; December 2016; March 2017; June 2017; September 2017; December 2017; and March 2018 violated substantive and procedural due process and the equal protection clause, id.;

(6) the 90-day reviews in December 2016; March 2017; June 2017; September 2017; December 2017; and March 2018 violated the RLUIPA, id.; and (7) Daker's reassignment to Tier II, Phase One in December 2016 based on Disciplinary Report Number 666699 violated the First Amendment because it was retaliatory and chilled his exercise of the right to seek redress and violated substantive due process, id. at 26. He seeks release from administrative segregation. Id.

## I.     Whether Daker Exhausted his Available State Remedies

In relevant part, 28 U.S.C. § 2254 provides that a writ of habeas corpus "shall not be granted unless it appears that—the applicant has exhausted" his available State court remedies or "there is an absence of available State corrective process[.]"  §§ 2254(b)(1)(A), (B)(i). Additionally, a petitioner cannot "have exhausted the remedies available in the courts of the State, . . ., if he has the right under the law of the State to raise, by any available procedure, the question presented."  § 2254(c); see also Williams v. Humphrey, Case No. CV412-106, 2019 WL 1473999, at *3 (S.D. Ga. Apr. 3, 2019) (noting federal review of a § 2254 petition is typically precluded "when a petitioner fails to properly exhaust his claims in the underlying state court proceedings[,]" and citing § 2254(b)(1)(A))). To exhaust, "'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'"  Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). The United States Supreme Court has noted the "exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'"  Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) (alteration in original) (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)).

It is well-established in the Eleventh Circuit "[t]he exhaustion requirement is not jurisdictional, but rather, is a procedural rule based in comity." King v. Chase, 384 F. App'x 972, 974 (11th Cir. 2010) (citing Thompson v. Wainwright, 714 F.2d 1495, 1503–04 (11th Cir. 1983)). Thus, the state attorney general can waive the exhaustion requirement in federal habeas proceedings. § 2254(b)(3); Hills v. Washington, 441 F.3d 1374, 1376 (11th Cir. 2006). "[T]he state either may waive exhaustion expressly, or impliedly by failing to raise the issue or arguing that exhaustion would be futile." King, 384 F. App'x at 974 (citation omitted). A district court can accept or reject the state's waiver as a matter of discretion. Id. "[T]he district court may only invoke the exhaustion bar *sua sponte* when doing so would serve an important federal interest," such as when "'an unresolved question or fact of state law might have an important bearing,' and a federal court should 'insist on complete exhaustion to make sure that it may ultimately review the issue of a fully informed basis.'" Id. (quoting Esslinger v. Davis, 44 F.3d 1515, 1524 n.34 (11th Cir. 1995)).

In this case, Respondent "does not contest exhaustion as to the claims raised" in Daker's original Petition and his Third Amended Petition but expressly "reserves the right to contest exhaustion if [Daker] attempts to raise additional claims, as Respondent does not waive exhaustion." Doc. 30 at 5; Doc. 200 at 9–10. Even though Respondent expressly does not waive exhaustion, to the extent Respondent's non-contest can be deemed a waiver, the Court, in its discretion can reject a waiver and sua sponte raise the issue of exhaustion. The Court elects to do so here, particularly because an important federal interest would be served in having Daker exhaust his available State remedies. See Paez v. Sec'y, Fla. Dep't of Corr., 947 F.3d 649, 654 (11th Cir. 2020) (citing Allen v. Perini, 424 F.2d 134 (6th Cir. 1970), and noting that, "[if] at any time during the course of a habeas corpus proceeding the District Court finds that the prisoner

8

has not exhausted the remedies available to him in the courts of the State, the petition should be dismissed."). Here, the State of Georgia should have had the opportunity in the first instance to decide the relative merits of Daker's § 2254 challenges.

Daker challenges several disciplinary proceedings and the attendant disciplinary sanctions issued against him while he was housed at Georgia State Prison. Doc. 146. Daker notes he exhausted his administrative remedies by appealing his disciplinary proceedings and his Tier II hearings with the Georgia Department of Corrections. Doc. 1 at 6; see also Doc. 146. Respondent does not contest this, and the Court has no reason to doubt Daker's assertion regarding administrative remedies. However, Daker has not exhausted his state judicial remedies. Contrary to Daker's conclusory assertion that Georgia provides no remedy for judicial review of prison disciplinary proceedings or Tier II confinement, doc. 1 at 6, Georgia law does provide judicial remedy for disciplinary proceedings in a prison context. Under Georgia law, issues regarding discipline in the prison context, like Daker's challenges, are typically "raised in a mandamus action or is a suit against the agency denying the requested relief." Adams v. Chapman, Civil Action No. 5:13-CV-225, 2014 WL 1681427, at *2 (M.D. Ga. Apr. 28, 2014); Brown v. Caldwell, 204 S.E.2d 137 (Ga. 1974) (noting Georgia habeas statutes are generally not the proper procedure to attack prison discipline decisions; rather, inmates must file appeals with the Georgia Department of Corrections and then bring mandamus or injunction action in state courts); see also Heard v. Hopper, 212 S.E.2d 797 (Ga. 1975) (same); see also Ga. Comp. R. & Reg. Ch. 125-3-2 (giving Department of Corrections ability to maintain discipline within its institutions); Ga. Dep't of Corrs. Standard Operating Procedure IIB02-0001, www.powerdms.com/public/GADOC/tree/documents, 209, last accessed Mar. 3, 2020.

Apart from filing a petition for writ of mandamus or an action for injunctive relief in Georgia courts, Daker may also have also been able to pursue the challenges in this action in an application for writ of habeas corpus in the Georgia courts. See Dill v. Holt, 371 F.3d 1301, 1303 (11th Cir. 2004) (noting that, even though the type of custody the petitioner in Medberry v. Crosby, 351 F.3d 1049 (11th Cir. 2003), complained about resulted from administrative decision, he was held to "be in custody pursuant to a state court judgment"); see also Jenkins v. Drummond, No. CV410-008, 2010 WL 1737601, at *1 n.1 (S.D. Ga. Apr. 6, 2010) ("Georgia law recognizes the right of a person 'restrained under any pretext . . . to seek a writ of habeas corpus to inquire into legality of restraint." (quoting O.C.G.A. § 9-14-1(a))); Miller v. Walker, No. CV 109-067, 2009 WL 5343063, at *5 (S.D. Ga. Sept. 22, 2009), *report and recommendation adopted, as modified*, 2010 WL 114886 (S.D. Ga. Jan. 12, 2010) (finding habeas appropriate to challenge disciplinary proceedings but noting petitioner had to exhaust before this Court would address his petition).[6] Thus, it is clear that Daker had available state judicial remedies. Whether Daker was required to pursue his challenges in an action for mandamus or injunctive relief or in a state habeas petition need not be resolved—what matters is that state judicial remedies were available to Daker.

Nothing in Daker's filings or anything else in the record suggests Daker has brought any court action contesting the disciplinary proceedings or resulting sanctions he received in Georgia courts. Moreover, the timing and history of this action demonstrate Daker has not exhausted

---

[6]   Habeas corpus is the appropriate remedy for a state prisoner seeking post-conviction relief from a federal court. Medberry v. Crosby, 351 F.3d 1049, 1062 (11th Cir. 2003). While 28 U.S.C. § 2241 generally authorizes the granting of the writ, "[m]ost state prisoners' applications for writs of habeas corpus are subject also to the additional restrictions of § 2254. That is, if a state prisoner is 'in custody pursuant to the judgment of a State court,' his petition is subject to § 2254." Id. Thus, nothing in the Report and Recommendation undermines this Court's earlier determination that Daker's Petition was not barred in its entirety. Docs. 15, 52. However, as found herein, even though § 2254 is a proper vehicle, Daker is still subject to procedural limitations.

10

available state judicial remedies. Daker initiated this action in February 2017, challenging, among other things, his 90-day review on December 21, 2016. Doc. 1 at 40. It is impossible that Daker could have pursued and exhausted state judicial remedies in the short time between December 2016 and February 2017. See, e.g., Miller, 2009 WL 5343063, at *5 ("[B]ased on the Court's knowledge of the extensive state appellate review process, it would not be possible for Petitioner to have fully exhausted his claims" given the timing of his allegations and the date he filed his petition). Finally, Daker's conclusory assertion that no state judicial remedies are available confirms he has not pursued, much less exhausted, available state judicial remedies.[7]

Accordingly, Daker has not exhausted his available state judicial remedies, and the Court should **DISMISS without prejudice** Daker's Third Amended Petition based on his failure to exhaust.

## II. Whether Daker's Claims are Moot[8]

In his Third Amended Petition, Daker challenges his April 2016 placement in Tier II, his subsequent reassignment to different Phases of Tier II, and his 90-day review hearings, all at GSP. Doc. 146. In terms of his factual allegations, Daker describes events starting as early as

---

[7] To the extent Daker contends that he did, in fact, pursue and exhaust state judicial remedies before filing this § 2254 Petition, he may explain so in any response to this Report and Recommendation. See Paez v. Sec'y, Fla. Dep't of Corr., 947 F.3d 649, 655 (11th Cir. 2020) (holding that response period to Report and Recommendation provides a habeas petitioner "ample notice and opportunity" to explain why the petition should not be dismissed).

[8] As noted, this Court asked the parties to submit briefing on whether Daker's Petition is moot in light of his movement history to different penal institutions and his requested relief. Doc. 242. The parties responded and agreed that Daker's transfer, on its own, does not moot Daker's petition, deprive this Court of jurisdiction, or render venue improper in this District. Docs. 243, 244. The Court also agrees regarding the effect of Daker's transfer. However, the mootness issue discussed here, which the Court has raised sua sponte, arises not from Daker's transfer, but from the periodic reassessment of Daker's status on Tier II, and the fact that with each 90-day review, Daker has completed a period of assignment on Tier II and his custodian has made a new determination as to whether he should remain on Tier II.

11

2015, including various disciplinary reports, reviews, and segregation assignments. The latest date of any event Daker describes in his Petition is his March 2018 90-day review. As a result of this March 2018 review, Daker remained in Tier II, Phase One based on Disciplinary Reports Numbered 745629 and 746600, charging him with possession of a cellular telephone (on two separate occasions) and two cellular telephone chargers. Doc. 201-1 at 40, 175, 199. Daker was found guilty of these Reports on February 6 and 15, 2018, respectively, after hearings and was sanctioned with 90 days' telephone, store, and package restriction and 45 days' restriction as to visitation on each Report.[9] Id. at 175, 199. As noted above, Daker was transferred to Macon State Prison in April 2018, soon after the March 2018 review. Daker filed his § 2254 petition in the Middle District of Georgia, challenging his placement and continued assignment in Tier II at Valdosta State Prison in May 2018.

Article III of the Constitution "extends the jurisdiction of federal courts to only 'Cases' and 'Controversies.'" Strickland v. Alexander, 772 F.3d 876, 882 (11th Cir. 2014). This "case-or-controversy restriction imposes" what is "generally referred to as 'justiciability' limitations." Id. There are "three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement." Harrell v. The Fla. Bar, 608 F.3d 1241, 1247 (11th Cir. 2010) (internal quotation marks and alterations omitted). Regarding the mootness strand, the United States Supreme Court has made clear that "a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992) (internal citation omitted).

---

[9] Disciplinary Report Number 746600 was later expunged on appeal, as the hearing on this Report "was not held in accordance to the time frame set in [Standard Operating Procedure IIB02-0001]." Doc. 201-1 at 212.

Accordingly, "[a]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks omitted). Questions of justiciability are not answered "simply by looking to the state of affairs at the time the suit was filed. Rather, the Supreme Court has made clear that the controversy 'must be extant at all stages of review, not merely at the time the complaint is filed.'" Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189–90 (11th Cir. 2011) (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). A "'mootness issue quite clearly can be raised *sua sponte*. . . .'" Id. (quoting Medberry, 351 F.3d at 1054 n.3, in turn quoting Sannon v. United States, 631 F.2d 1247, 1250 (5th Cir. 1980))).

Daker has not presented a justiciable controversy for which this Court can provide meaningful relief. In his Petition, Daker argues he never should have been placed on Tier II at GSP and his continued assignment to Tier II at GSP was unlawful. Daker challenges alleged disciplinary violations and review proceedings going back as far as 2015, and, most recently, his 90-day review in March 2018. Doc 146. Notably, at that March 2018 90-day review, the Classification Committee recommended Daker stay on Tier II, Phase One because he had two disciplinary violations in January 2018 for the possession of cell phones and related devices. Daker attempts to portray the events that led up to his Petition as a continuous and uninterrupted chain of misconduct by Respondent (though, challenged in seven different habeas grounds). Id. But the only relevant inquiry for this habeas petition—where Daker seeks release from Tier II— is whether Daker is properly assigned to Tier II *now*.[10] At the time of his March 2018 90-day

---

[10] This is not to suggest that Daker lacks any form of relief for his previous assignment to Tier II. Daker may be able to seek damages or other relief in a § 1983 suit related to his earlier administrative segregation assignments. Indeed, Daker is familiar with pursuing § 1983 claims related to administrative

13

review, Daker had already served all his time assigned to Tier II for previous alleged transgressions. Likewise, any procedural challenges Daker may have had to previous disciplinary violations or assignment reviews were mooted, at least for the purposes of this habeas action, because Daker had already completed his time related to those violations and reviews. Thus, any grounds in which Daker asserts he was unlawfully assigned to Tier II before March 2018 are moot. See, e.g., Medberry, 351 F.3d at 1053–54 (finding where petitioner already completed his disciplinary term and been released from disciplinary confinement at the time he filed his § 2254 petition, his petition was moot when filed and could not "be revived by collateral consequences[]") (citation omitted); Cole v. Jones, Case No. 5:18cv203, 2018 WL 7436964, at *1 (N.D. Fla. Nov. 27, 2018) ("Where a prisoner has completed an imposed term of administrative or disciplinary confinement before he files his habeas petition, the petition is considered moot when filed and cannot be revived by collateral consequences."); Reynolds v. St. Lawrence, Case No. CV415-207, 2015 WL 5037893, at *3 (S.D. Ga. Aug. 25, 2015) (recognizing disciplinary sentence completed and that petitioner would have to show he suffered from collateral consequence to prevent mootness finding and concluding this Court unable to find any case challenging already-expired disciplinary sanction met case-or-controversy requirement). Indeed, there is no indication Daker was held on Tier II after his March 2018 90-day review for any reason other than the two disciplinary violations that occurred in January 2018.[11]

---

segregation. See, e.g., Compl., Daker v. Dozier, 6:18-cv-73 (S.D. Ga. July 2, 2018), ECF No. 1. The important distinction here is that Daker only seeks release from Tier II in this habeas action, and, therefore, the current basis for his confinement is relevant.

[11]    Importantly, the disciplinary violations Daker was charged with in January 2018 (possession of a cell phone) would have provided an adequate, independent basis for Daker's placement in Tier II. Doc. 31-1 at 21–22. Even though one of the Reports was later expunged, doc. 201-1 at 212, only one of the January 2018 Reports would have been an adequate, independent basis for Daker's placement.

Because only Daker's most recent assignment to Tier II matters for habeas purposes, the only events Daker could arguably challenge as a basis for release from Tier II in this action are the January 2018 disciplinary reports and the March 2018 90-day review. But even those events cannot properly be challenged here. Daker was transferred to Macon State Prison one month after his March 2018 90-day review and immediately placed in Tier II at that institution. He was later transferred to Valdosta State Prison, was assigned to Tier II there, and remains in Tier II at that institution. Daker has informed the Court that, since his April 2018 transfer from GSP, he had 90-day reviews at Macon State Prison in June 2018, September 2018, and December 2018 and 90-day reviews at Valdosta State Prison in December 2018, March 2019, June 2019, September 2019, and December 2019. Doc. 234. This means that Daker has had at least eight 90-day Tier II reviews since he left GSP, and on every occasion, he was kept on Tier II. This Court has no information about what occurred during the 90-day reviews at Macon State Prison or Valdosta State Prison or concerning whether any new disciplinary violations contributed to the decision to continue Daker's assignment to Tier II. Indeed, it does not appear Daker challenges any of those decisions in this action; thus, the Court could not know. Moreover, Daker is challenging his current assignment to Tier II (and presumably the procedures involved in that assignment decision and the merits of the decision) in his § 2254 petition in the Middle District of Georgia, further confirming he does not intend to challenge those events in this action. Thus, Daker's grounds for relief related to the January 2018 disciplinary violations and the March 2018 90-day review are mooted by the undisputed fact that Daker has had at least eight

90-day reviews since those events and, on each occasion, prison officials have determined Daker should remain on Tier II.[12]

In sum, the only relevant inquiry for this habeas petition is whether Daker is currently being unlawfully held in Tier II segregation. The undisputed facts demonstrate that Respondent had an independent basis for assigning Daker to Tier II in March 2018, based on disciplinary violations that occurred in January 2018. However, the Court cannot address any challenges to the March 2018 90-day review or the January 2018 disciplinary violations, because those events no longer serve as the basis for Daker's current assignment to Tier II. Accordingly, all of the grounds asserted in Daker's § 2254 Petition in this action are moot. For these reasons, the Court should **DENY as moot** Daker's Petition.[13]

---

[12] Any order this Court could enter on the relative merits of this issue would be essentially an impermissible advisory opinion. Middlebrooks v. Sacor Financial, Inc., 775 F. App'x 594, 598–99 (11th Cir. 2019) ("'Any decision on the merits of a moot case or issue would be an impermissible advisory opinion.'" (quoting Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1217 (11th Cir. 2000))). Indeed, even if the Court could reach the merits of Daker's Petition in this action, the most the Court could determine is whether Daker was unlawfully held in Tier II after his last 90-day review at GSP, and then, even if the Court found in Daker's favor, the Court could not order Daker released from Tier II at Valdosta State Prison because Daker has had at least eight 90-day reviews since then, and at each review the Classification Committee has decided anew that Daker should remain on Tier II. Furthermore, Daker is actively challenging his ongoing assignment to Tier II in the Middle District of Georgia. Daker, 2020 WL 751817, *1, *3 (citing Krist v. Ricketts, 504 F.2d 887, 887–88 (5th Cir. 1974), as allowing denial of procedural due process during disciplinary segregation proceeding claims under habeas and remanding to district court for consideration of same).

[13] Notably, if this case were to go forward in this District (and it should not), the proper respondent would be Daker's current custodian (likely, McLaughlin, the warden at Valdosta State Prison), and the Court would order Respondent Allen to be terminated and replaced. Rule 2(a) of the Rules Governing Section 2254 Cases (noting the only proper respondent in a § 2254 action is the state officer having custody of the petitioner). As a result, Daker would be pursuing two essentially identical § 2254 petitions, naming the same respondent, seeking the same relief (release from Tier II), in two different Districts. For good reason, courts routinely reject attempts by prisoners to pursue multiple, essentially identical habeas petitions. See, e.g., Dewitt v. Fla. Dep't of Children & Families, No. 4:12cv106, 2012 WL 1231006, at *1 (N.D. Fla. Mar. 13, 2012) ("It is improper for Petitioner to challenge the same confinement by separate suits filed in different courts."); Enriquez v. Briody, No. 2:02-CV-452, 2005 WL 1026059, at *2 (M.D. Fla. Apr. 26, 2005) (rejecting duplicative § 2254 petition, noting that "[p]iecemeal pleading and forum shopping will not be tolerated"). Indeed, the risk of inconsistent judgments would strongly militate against allowing such duplicative petitions to proceed. Thus, if the case proceeded, it

**III.     Daker's Motion for Summary Judgment**

Daker has filed a motion for summary judgment in this action which seeks disposition in his favor entirely on the merits.  Docs. 208, 221, 228.  Because this Court should **DISMISS** Daker's § 2254 cause of action in its entirety, or alternatively, **DENY as moot** Daker's Petition in this Court, the Court should **DENY as moot** Daker's Motion for Summary Judgment.

**IV.     Leave to Appeal *in Forma Pauperis* and Certificate of Appealability**

The Court should also deny Daker leave to appeal *in forma pauperis* and deny him a Certificate of Appealability.  Though Daker has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Pursuant to Rule 11 of the Rules Governing § 2254 Cases, "the district court must issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (emphasis supplied); see also Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding in forma pauperis is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier v. Preslicka,

---

would likely be dismissed in deference to the Middle District of Georgia case, given that court is dealing with Daker's more recent, non-moot challenges, involving the same respondent and same requested relief.

17

314 F.3d 528, 531 (11th Cir. 2002); Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a Certificate of Appealability is issued. A Certificate of Appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a Certificate of Appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a Certificate of Appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of the filings in this case and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** Daker *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **DISMISS without prejudice** Daker's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, or alternatively, **DENY as moot** Daker's Petition. I also **RECOMMEND** the Court **DENY as moot** Daker's Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Daker leave to proceed *in forma pauperis* and a Certificate of Appealability.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 3rd day of March, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA